## UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

**Thurgood Marshall U.S. Courthouse  40 Foley Square, New York, NY 10007 Telephone: 212-857-8500**

### MOTION INFORMATION STATEMENT

**Docket Number(s):** 24-2848

Caption [use short title]

**Motion for:** Expedited Proceedings (Emergency Motion)

Federal Trade Commission v. Tapestry, Inc.

Set forth below precise, complete statement of relief sought:

Defendants-Appellants seek an expedited briefing

and argument schedule as follows:

1. Appellants' opening brief due on November 20, 2024;

2. Appellee's answering brief due on December 20, 2024;

3. Appellants' reply brief due on December 30, 2024; and

4. Argument during the Court's January 6, 2025 sitting.

**MOVING PARTY:** Tapestry, Inc., Capri Holdings Limited  **OPPOSING PARTY:** Federal Trade Commission

☐ Plaintiff  ☐ Defendant

■ Appellant/Petitioner  ☐ Appellee/Respondent

**MOVING ATTORNEY:** See attached rider  **OPPOSING ATTORNEY:** Imad D. Abyad

[name of attorney, with firm, address, phone number and e-mail]

See attached rider

Federal Trade Commission

600 Pennsylvania Avenue, NW, Washington, DC 20580

(202) 326-3579 / iabyad@ftc.gov

**Court- Judge/ Agency appealed from:** United States District Court for the Southern District of New York - Judge Jennifer L. Rochon

Please check appropriate boxes:

Has movant notified opposing counsel (required by Local Rule 27.1):
■ Yes  ☐ No (explain):_____

Opposing counsel's position on motion:
☐ Unopposed  ■ Opposed  ☐ Don't Know
Does opposing counsel intend to file a response:
■ Yes  ☐ No  ☐ Don't Know

**FOR EMERGENCY MOTIONS, MOTIONS FOR STAYS AND INJUCTIONS PENDING APPEAL:**

Has this request for relief been made below?  ☐ Yes ■ No
Has this relief been previously sought in this court?  ☐ Yes ■ No

Requested return date and explanation of emergency:_____
An expeditious ruling on this motion (on or around November 1, 2024) is requested to
ensure that this appeal can be briefed, argued, and decided before February 10, 2025,
to avoid needlessly upending an $8.5 billion merger.

Is the oral argument on motion requested?  ☐ Yes  ■ No (requests for oral argument will not necessarily be granted)

Has the appeal argument date been set?  ☐ Yes  ■ No  If yes, enter date:_____

**Signature of Moving Attorney:**

s/ Alfred C. Pfeiffer  **Date:** October 29, 2024  Service: ■ Electronic  ☐ Other [Attach proof of service]

Form T-1080 (rev. 10-23)

**Rider To Motion Information Statement (No. 24-2848)**

**Counsel for Moving Parties**

Jonathan M. Moses
Elaine P. Golin
Adam L. Goodman
WACHTELL, LIPTON, ROSEN & KATZ
51 West 52nd Street
New York, New York 10019
(212) 403-1000
JMMoses@wlrk.com
EPGolin@wlrk.com
ALGoodman@wlrk.com

*Counsel for Defendant-Appellant
Capri Holdings Limited*

Alfred C. Pfeiffer
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
(415) 395-8240
al.pfeiffer@lw.com

Amanda P. Reeves
Melissa Arbus Sherry
Jennifer L. Giordano
Blake E. Stafford
Christina R. Gay
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004
(202) 637-2200
amanda.reeves@lw.com
melissa.sherry@lw.com
jennifer.giordano@lw.com
blake.stafford@lw.com
christina.gay@lw.com

Lawrence E. Buterman
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, NY 10020
(212) 906-1200
lawrence.buterman@lw.com

Sean M. Berkowitz
LATHAM & WATKINS LLP
330 N. Wabash Avenue, Suite 2800
Chicago, IL 60611
(312) 876-7700
sean.berkowitz@lw.com

*Counsel for Defendant-Appellant
Tapestry, Inc.*

# 24-2848

## United States Court of Appeals
## for the Second Circuit

———————————————

FEDERAL TRADE COMMISSION,

*Plaintiff-Appellee,*

v.

TAPESTRY, INC.;
CAPRI HOLDINGS LIMITED,

*Defendants-Appellants.*

———————————————

On Appeal from the United States District Court for the Southern District of New York
No. 1:24-cv-03109 (Hon. Jennifer L. Rochon)

———————————————

## DEFENDANTS-APPELLANTS' EMERGENCY MOTION FOR EXPEDITED PROCEEDINGS

———————————————

Jonathan M. Moses
Elaine P. Golin
Adam L. Goodman
WACHTELL, LIPTON, ROSEN & KATZ
51 West 52nd Street
New York, NY 10019
(212) 403-1000

*Counsel for Defendant-Appellant
Capri Holdings Limited*

Alfred C. Pfeiffer
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
(415) 395-8240
al.pfeiffer@lw.com

Amanda P. Reeves
Melissa Arbus Sherry
Jennifer L. Giordano
Blake E. Stafford
Christina R. Gay
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004
(202) 637-2200

*Counsel for Defendant-Appellant
Tapestry, Inc.*

[*Additional Counsel Listed on Signature Block*]

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, Defendants-Appellants Tapestry, Inc. and Capri Holdings Limited certify as follows:

1.    Tapestry, Inc. has no parent corporation, and no publicly held corporation owns 10% or more of its stock.

2.    Capri Holdings Limited has no parent corporation, and no publicly held corporation owns 10% or more of its stock.

# TABLE OF CONTENTS

**Page**

CORPORATE DISCLOSURE STATEMENT ........................................................i

TABLE OF AUTHORITIES ...................................................................... iii

BACKGROUND ........................................................................................1

ARGUMENT ............................................................................................6

CONCLUSION ........................................................................................12

# TABLE OF AUTHORITIES

**Page(s)**

*Brown Shoe Co. v. United States*,
 370 U.S. 294 (1962)...................................................................5

*FTC v. Weyerhaeuser Co.*,
 665 F.2d 1072 (D.C. Cir. 1981)..................................................8

*Grumman Corp. v. LTV Corp.*,
 665 F.2d 10 (2d Cir. 1981) ..........................................................7

*Gulf & Western Industries, Inc. v. Great Atlantic & Pacific Tea Co.*,
 476 F.2d 687 (2d Cir. 1973) .........................................................7

*In re Iceland Inc.*,
 112 F.3d 504 (2d Cir. 1997) ..........................................................7

*New York ex rel. Schneiderman v. Actavis PLC*,
 787 F.3d 638 (2d Cir. 2015) ..........................................................7

*Starbucks Corp. v. McKinney*,
 144 S. Ct. 1570 (2024)...................................................................7

## STATUTES, REGULATIONS, AND RULES

15 U.S.C. § 45(c) ................................................................................6

15 U.S.C. § 53(b) ...............................................................................6

16 C.F.R. § 3.42(c)(9) ........................................................................6

16 C.F.R. §§ 3.51-3.54.......................................................................6

Fed. R. App. P. 2................................................................................7

Fed. R. App. P. 2(a) ...........................................................................6

## OTHER AUTHORITIES

Capri Holdings Ltd., *Capri Holdings Limited Announces First
 Quarter Fiscal 2025 Results* (Aug. 8, 2024),
 https://perma.cc/RB6U-WDHK....................................................9

Pamela N. Danziger, *FTC Blocks Tapestry-Capri Merger as Tapestry Vows to Fight for the Consumer*, Forbes (Oct. 25, 2024), https://perma.cc/HUP5-FPEL ...................................................................... 8

Suzanne Kapner & Dave Michaels, *Coach-Michael Kors Deal Blocked by Judge*, Wall St. J. (Oct. 25, 2024), https://tinyurl.com/4ndj2vkd ...................................................................... 8

Julie Zerbo, *FTC v. Tapestry: A Case Over M&A in the "Accessible Luxury" Market*, TFL (Oct. 28, 2024), https://perma.cc/TSV6-HLZ6 ...................................................................... 8

Appellants Tapestry, Inc. and Capri Holdings Limited respectfully request that this Court enter an expedited briefing and argument schedule in this appeal that will enable the Court to render a decision by February 10, 2025, which is the outside date in the merger agreement. The district court's ruling conflicts with the law, facts, and common-sense economics. The expedited relief this motion seeks is necessary to ensure that the preliminary injunction does not needlessly upend an $8.5 billion merger agreement. Counsel for Appellee Federal Trade Commission (FTC) has indicated that the FTC opposes the requested relief.

## BACKGROUND

Tapestry is a New York-based company that owns Coach, Kate Spade, and Stuart Weitzman. Capri is a United Kingdom-based company that owns Michael Kors, Jimmy Choo, and Versace. Tapestry seeks to acquire Capri to unlock unrealized value in—*and enhance demand for*—products sold by all three of Capri's brands in a complementary transaction. ECF No. 334, ¶¶ 74, 76. The Michael Kors brand alone has seen its sales decline by almost 30% in just the last five years, *id.* ¶ 6, and revitalizing this brand is one of Tapestry's key motivations for the deal. Tapestry previously repositioned Coach, improving value and increasing consumer demand for its products. Tapestry's investment in infrastructure and consumer-facing analytics and its position of financial strength provide a platform to improve

1

the Michael Kors brand's product quality and value, consumer connections, and ultimately its sales quantities—all of which are procompetitive objectives. *Id.* ¶ 72.

Following months of diligence and negotiations, Tapestry and Capri signed an agreement in August 2023 for Tapestry to acquire Capri for approximately $8.5 billion. ECF No. 339 at 5. As is typical in large scale corporate transactions, this carefully negotiated agreement contemplated that these two public companies cannot be held in limbo indefinitely. As a result, if the merger does not close by February 10, 2025, either party may terminate the deal thereafter. *See id.* at 168.

On April 23, 2024, the FTC filed suit in the Southern District of New York, seeking a preliminary injunction to enjoin the merger pending resolution of the FTC's administrative proceeding (including any appeal to a U.S. Court of Appeals). *Id.* at 5. The FTC claimed that the transaction would substantially lessen competition in the "accessible luxury handbag" market, in violation of Section 7 of the Clayton Act. In particular, the FTC argued that Tapestry's control of Coach, Kate Spade, and Michael Kors would give it a dominant share in the alleged "accessible luxury handbag" market, which would enable it to profitably raise prices of these brands' handbags because consumers would not be able to substitute and buy alternatives. The FTC offered this theory despite conceding that at least over 200 other companies sell "accessible luxury handbags" through the wholesale channel alone (not counting direct to consumer sales) *and* the undisputed evidence

2

that, in the face of this competition, Michael Kors' sales declined by 16% from 2022 to 2023. *See* ECF No. 334, ¶¶ 8, 69, 110.

What constitutes an "accessible luxury handbag" under the FTC's theory remained elusive at best throughout the litigation process, including during the presentation of the facts and through closing arguments. At times, the FTC loosely referred to an "accessible luxury handbag" market comprised of selected handbag silhouettes (totes, but not clutches for example) that sold between $100 and $1000, notwithstanding the fact that the evidence established that the majority of Michael Kors and Kate Spade handbags sell for below $100 and are therefore outside that market to the extent it is defined by price. *See id.* ¶ 112. Perhaps for that reason, the FTC's economic expert, Dr. Loren Smith, repeatedly disavowed that the market share calculations he presented were based on an "accessible luxury handbag" market defined by a price band, instead calculating shares based on a market defined by categories of brands a third-party vendor identified as sold through the wholesale channel.[1] *Id.* ¶¶ 109-10. This means that handbags sold at the exact same price as the parties' handbags were excluded from Dr. Smith's "accessible luxury handbag" market simply because of the third-party's categorization or the fact they were not sold through a wholesaler. Handbag brands with prices in the inconsistently-applied

---

[1] In this context, the "wholesale channel" means third-party sellers of handbags, including department stores and multi-brand websites.

price range were excluded from the FTC's market definition for reasons having nothing to do with their product features or substitutability with the merging parties' products.

But what was perhaps most revealing about the litigation is what the evidence did not show. No consumer, wholesaler, or competitor provided any testimony that this transaction was likely to harm consumers. Indeed, the record did not contain any factual evidence showing that the proposed acquisition would, in fact, result in harm to consumers. Nor did the record support the district court's counterintuitive conclusion that consumers shop based on a handbag's *ticket price*, rather than *the "out the door" price* they actually pay for a handbag. And, perhaps most significantly, the district court' decision does not cite any market share evidence to confirm that the parties will be dominant in the sale of handbags between $100 and $1000.[2] The unrebutted evidence showed that the majority of Michael Kors and Kate Spade handbags sell for *below $100* and the record does not contain market

---

[2]    Indeed, despite defining the market as "accessible luxury handbags," the FTC never actually presented market shares related to handbags at all. Instead, the FTC provided shares based on the sales of *handbag brands* irrespective of whether the brand's specific bags constitute "accessible luxury handbags." This meant that for brands the FTC's economic expert did not count as "accessible luxury"—be it because those brands' handbags were not sold through the wholesale channel or because those brands sold a mix of handbags above and below a $100—all of those handbags were excluded from the market share calculations regardless of whether they were sold to consumers at the same prices as other handbags that are in the FTC's "accessible luxury handbag" market.

4

share data in support of the view that the transaction is presumptively anticompetitive if those handbags are excluded from the market.

The district court compounded these errors by ruling that it would be anticompetitive for Tapestry to improve quality, brand equity, and therefore consumer demand for Michael Kors handbags if the result would be that, in this intensely competitive market, Michael Kors' prices increased by virtue of not being sold at deep discounts because of lack of demand. ECF No. 339 at 143-44. The district court's decision to treat handbags as commodities when they are in fact highly differentiated products is belied by the record, law, and, again, common sense. Perhaps most relevant here, it runs headfirst into settled precedent that products sold at a spectrum of prices and quality cannot be differentiated into separate markets. *See, e.g.*, *Brown Shoe Co. v. United States*, 370 U.S. 294, 326 (1962) (rejecting an argument that "medium-priced shoes do not compete with low-priced shoes" when it "would be unrealistic" to conclude that "men's shoes selling below $8.99 are in a different product market from those selling above $9.00"). The district court's decision finding effectively a market based on "handbag brands" and assuming that post-closing consumers will have no alternative but to pay more for Michael Kors handbags misapprehends the commercial realities of the fashion industry, which is intensely competitive and subject to constantly changing consumer taste.

On this record, on October 24, 2024, the district court granted the FTC's motion for a preliminary injunction. ECF No. 339. Defendants filed this appeal two business days later, on October 28, 2024. Absent action by this Court, the injunction blocks the parties from closing the transaction until the lengthy FTC administrative proceedings and all appeals conclude, which is a process that will take at least an additional 12-24 months. The preliminary injunction will thus stay in place pending (1) the completion of administrative proceedings of up to 210 hours before an administrative law judge, which will not begin until December 9, 2024, and will result in only a "recommended decision"; (2) a process by which the Commission itself "reviews" the recommended decision, including any "exceptions" taken, and may "modify or set aside" the recommended findings and conclusions before issuing "its final decision"; and (3) any appeal to a federal court of appeals. *See* 15 U.S.C. §§ 45(c), 53(b); 16 C.F.R. §§ 3.42(c)(9), 3.51-3.54.

## ARGUMENT

Defendants respectfully request that this Court expedite the proceedings in this appeal.

1. Under Federal Rule of Appellate Procedure 2(a), this Court may "suspend" its ordinary rules "in a particular case" in order "to expedite its decision or for other good cause." Fed. R. App. P. 2(a). "The primary purpose of this rule is to make clear the power of the courts of appeals to expedite the determination of

cases of pressing concern to the public or to the litigants by prescribing a time schedule other than that provided by the rules." Fed. R. App. P. 2, Advisory Committee's Note (1967).

This Court is accordingly "generous in granting motions to expedite" for good cause under Rule 2. *In re Iceland Inc.*, 112 F.3d 504, 1997 WL 196438, at *1 (2d Cir. 1997) (unpublished). And an expedited appeal process is especially appropriate in time-sensitive antitrust cases. *See, e.g.*, *Gulf & W. Indus., Inc. v. Great Atl. & Pac. Tea Co.*, 476 F.2d 687, 689 (2d Cir. 1973) (noting that the Court "granted appellants' motion to expedite their appeal" of a "preliminary injunction enjoining consummation of [a] tender offer" under the antitrust laws); *Grumman Corp. v. LTV Corp.*, 665 F.2d 10, 11 (2d Cir. 1981) (noting that the Court "expedited [an] appeal" of a preliminary injunction blocking an acquisition under the antitrust laws); *see also New York ex rel. Schneiderman v. Actavis PLC*, 787 F.3d 638, 650 (2d Cir. 2015) (noting that the Court "granted expedited review" of a preliminary injunction issued under the antitrust laws); Order, *North Am. Soccer League, LLC v. U.S. Soccer Fed'n, Inc.*, No. 17-3585 (2d Cir. Nov. 7, 2017) (expediting appeal of denial of a preliminary injunction under the Sherman Act).

2.    There is good cause to expedite the appeal here. The district court granted the "'extraordinary' equitable remedy" of a preliminary injunction, *Starbucks Corp. v. McKinney*, 144 S. Ct. 1570, 1576-77 (2024), to block a high-

profile merger between two public companies in an $8.5 billion transaction in a decision that has been characterized as changing the M&A landscape going forward in the U.S. fashion industry.[3]  As in other major high-stakes deals, the mere issuance of preliminary injunction will effectively "kill, rather than suspend, [the] proposed transaction" unless promptly reviewed by this Court.  *FTC v. Weyerhaeuser Co.*, 665 F.2d 1072, 1087 (D.C. Cir. 1981); *see* Suzanne Kapner & Dave Michaels, *Coach-Michael Kors Deal Blocked by Judge*, Wall St. J. (Oct. 25, 2024), https://tinyurl.com/4ndj2vkd ("In many cases, companies abandon their proposed deal if a federal judge grants the injunction, making the administrative case moot."). Here, the parties inked the merger agreement more than a year ago, and agreed that the merger agreement may terminate after February 10, 2025, meaning either party may walk away from the deal if the injunction remains in place as of that date.  When one considers the declining demand for the Michael Kors demand, its dwindling stock price, and that appellants cannot remain in limbo indefinitely, the fact that the

---

[3] *See, e.g.*, Pamela N. Danziger, *FTC Blocks Tapestry-Capri Merger as Tapestry Vows to Fight for the Consumer*, Forbes (Oct. 25, 2024), https://perma.cc/HUP5-FPEL (citing commentary observing the decision's "sweeping implications" and distortion of "the realities of the market"); *see also* Julie Zerbo, *FTC v. Tapestry: A Case Over M&A in the "Accessible Luxury" Market*, TFL (Oct. 28, 2024), https://perma.cc/TSV6-HLZ6 (noting that this case "will likely have implications that reverberate beyond the immediate fashion market").

deal will crater if the injunction remains on February 10, 2025 is an unavoidable commercial reality.

Demand for the Michael Kors brand (the competition the FTC claims is worth protecting) has been declining since 2018. ECF No. 334, ¶ 6. Every day that the preliminary injunction remains in place, Michael Kors' falling trajectory will worsen. Indeed, in the first quarter of Michael Kors' 2025 Fiscal Year, Michael Kors' revenue fell 14.2% compared to the prior year.[4] The decline of the Michael Kors brand is not surprising when one considers how intensely competitive the handbag industry is: as even the FTC acknowledges, Michael Kors competes with hundreds of brands of handbags and the thousands of bags sold by those companies. *Id.* ¶¶ 2, 18-19. Customers have been turning to the hundreds of existing and new brands that Michael Kors competes with, and they will continue to do so in droves resulting in flagging sales.

Against this backdrop, existing in a suspended state through a lengthy appeal process is not realistic: as of October 29, 2024, Capri shares were valued at less than $20.48— a decline of over 50% since the beginning of 2024. As the CEO of Capri testified, Capri is "having a very difficult time currently planning [its] future not knowing whether there will be a merger," and the uncertainty has created substantial

---

[4] *See* Capri Holdings Ltd., *Capri Holdings Limited Announces First Quarter Fiscal 2025 Results* (Aug. 8, 2024), https://perma.cc/RB6U-WDHK.

disruption among employees within the company. ECF No. 339 at 168 (alteration in original) (quoting Hr'g Tr. 176). The injunction also creates uncertainty for Tapestry, which must operate under the cloud of a potential $8.5 billion transaction without knowing whether it will close.

The district court, for its part, expressly recognized the "uncertainties faced by the merging firms and their employees" as a result of the preliminary injunction. *Id.* While the district court concluded that these uncertainties provided "an insufficient basis … not to enjoin the merger" at all, *id.* at 169, the uncertainty and risks to the deal created by the injunction surely satisfy the minimal good cause standard for expediting appellate review of that decision.

Absent expedition, this appeal will surely extend well beyond the termination date, making judicial review of the district court's decision on a typical timetable fatal to the transaction. Expedition is critical to ensure that the Court is able to provide meaningful relief to the parties *before* the merger agreement is terminated.

3.      To ensure that this Court is able to resolve this case before the February 10 outside date, Defendants respectfully request that the Court enter an expedited briefing schedule that will enable the Court to hear argument in this case during the January 6, 2025 sitting. To that end, Defendants propose the following schedule:

- Appellants' opening brief to be filed on November 20, 2024.

- Appellee's answering brief to be filed on December 20, 2024.

- Appellants' reply brief to be filed on December 30, 2024.

- Oral argument to take place during the Court's January 6, 2025 sitting.

Defendants submit that this proposed expedited schedule is reasonable given the time-sensitive nature of this appeal and the significant issues involved. Indeed, unlike other appeals receiving expedited treatment—in which the briefing and argument all occurred in a matter of weeks, *see supra* at 7[5]—this schedule gives the FTC a full month to prepare its answering brief and also affords the Court a month after argument to render a decision before the February 10, 2025 outside date in the merger agreement.

Counsel for the FTC has indicated that the FTC "oppose[s] expedition" and intends to respond to this motion "within 7 days." This motion is straightforward and time-sensitive, and the FTC provided no explanation for why it needs an entire week to respond. Defendants respectfully submit that the Court should order the FTC to respond by October 31, 2024 so that the Court can decide this motion as expeditiously as possible.

---

[5] As a comparison to the cited cases: In *Gulf & Western*, only 23 days elapsed between the district court's decision and oral argument in this Court; in *Northrop Grumman*, 14 days elapsed; and in *North Am. Soccer*, 41 days elapsed.

## CONCLUSION

For the foregoing reasons, the Court should expedite this appeal in accordance with the schedule proposed above.

Dated:  October 29, 2024                        Respectfully submitted,

                                                */s/ Alfred C. Pfeiffer*

Jonathan M. Moses                               Alfred C. Pfeiffer
Elaine P. Golin                                 LATHAM & WATKINS LLP
Adam L. Goodman                                 505 Montgomery Street, Suite 2000
WACHTELL, LIPTON, ROSEN & KATZ                  San Francisco, CA 94111
51 West 52nd Street                             (415) 395-8240
New York, New York 10019                        al.pfeiffer@lw.com
(212) 403-1000
JMMoses@wlrk.com                                Amanda P. Reeves
                                                Melissa Arbus Sherry
*Counsel for Defendant-Appellant*               Jennifer L. Giordano
*Capri Holdings Limited*                        Blake E. Stafford
                                                Christina R. Gay
                                                LATHAM & WATKINS LLP
                                                555 Eleventh Street, NW, Suite 1000
                                                Washington, DC 20004
                                                (202) 637-2200

                                                Lawrence E. Buterman
                                                LATHAM & WATKINS LLP
                                                1271 Avenue of the Americas
                                                New York, NY 10020
                                                (212) 906-1200

                                                Sean M. Berkowitz
                                                LATHAM & WATKINS LLP
                                                330 N. Wabash Avenue, Suite 2800
                                                Chicago, IL 60611
                                                (312) 876-7700

                                                *Counsel for Defendant-Appellant*
                                                *Tapestry, Inc.*

12

## CERTIFICATE OF COMPLIANCE

This motion complies with the type-volume limitations of Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 2688 words, excluding the parts exempted by Federal Rule of Appellate Procedure 32(f).

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman.

Dated:  October 29, 2024                    */s/ Alfred C. Pfeiffer*
                                            Alfred C. Pfeiffer