# 24-2848

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

FEDERAL TRADE COMMISSION,
*Plaintiff-Appellee,*

v.

TAPESTRY, INC., and
CAPRI HOLDINGS LIMITED,
*Defendants-Appellants.*

On Appeal from the United States District Court for the
Southern District of New York
No. 1:24-cv-03109 (Hon. Jennifer L. Rochon)

## FEDERAL TRADE COMMISSION'S MEMORANDUM OF LAW
## IN OPPOSITION TO APPELLANTS' MOTION
## FOR EXPEDITED PROCEEDINGS

Anisha S. Dasgupta
*General Counsel*

Matthew M. Hoffman
Imad D. Abyad
*Attorneys*

Federal Trade Commission
600 Pennsylvania Avenue, N.W.
Washington, DC 20580
(202) 326-3579
iabyad@ftc.gov

# TABLE OF CONTENTS

Preliminary Statement.................................................................. 1

Background .................................................................................. 3

Argument .................................................................................... 8

    I.   Appellants Have Not Demonstrated Irreparable Harm
        Absent Expedition. ......................................................... 9

   II.  Expedition Is Inappropriate Because the Appeal
        Involves a Voluminous Record and a Factbound
        Decision on Review. .................................................... 14

  III. Expedition Is Not in the Public Interest. .................... 15

Conclusion................................................................................ 16

Certificate of Compliance ....................................................... 18

## PRELIMINARY STATEMENT

Appellants' motion to expedite their appeal in this antitrust case should be denied. The district court granted a preliminary injunction following a seven-day evidentiary hearing at which the court considered testimony from dozens of fact and expert witnesses. The court issued a 169-page opinion discussing the evidence in detail. Appellants are now proposing a highly expedited schedule that affords about three months for briefing, oral argument, and decision by this Court. But they have not shown any good cause for such a rushed process: The February 10, 2025, date that appellants use to justify their request is a deadline of their own making, which appellants can modify at any time. Granting appellants' request based on a concocted deadline would prejudice the Federal Trade Commission (FTC or Commission), burden the Court, and ultimately harm the public by preventing the antitrust issues in this case from being given the full attention they deserve.

This case involves a proposed merger between appellants Tapestry, Inc. and Capri Holdings Limited (Capri), head-to-head competitors who own some of the most popular "accessible luxury" handbag brands in the United States, including Coach, Kate Spade, and

1

Michael Kors. The district court preliminarily enjoined the merger pending the outcome of an administrative hearing on the merits before the Commission. The court found that the combination of the two firms likely would violate the antitrust laws and that the balance of equities strongly favored preliminary relief.

Appellants' sole argument for expedition is an unsupported assertion that their merger agreement will be "terminated" unless they have a decision from this Court "*before*" February 10, 2025. Mo. 10. Appellants concede, however, that the terms of their agreement do not automatically terminate the deal on that date. *See* Mo. 8 ("the merger agreement *may* terminate after February 10, 2025") (emphasis added). The deal may be terminated after that date only if one of the merging parties decides to abandon the deal. *See* Mo. 8 ("either party may walk away from the deal if the injunction remains in place as of that date"). Unless one of the merging parties affirmatively opts out after February 10, 2025, the merger agreement will remain in full force while the Court considers and decides this appeal. This is exactly why the district court rejected appellants' argument that the February 10, 2025, deadline would cause a preliminary injunction to kill the merger. Op. 168-69.

2

Accordingly, the request for expedition should be denied. Should the Court decide nevertheless to expedite its consideration of this appeal, the FTC does not object to appellants' proposed briefing schedule and defers to the Court as to the argument and the timing of any decision.

## BACKGROUND

Appellants are sellers of fashion-related products, including bags, handbags, small leather goods, and other accessories. Tapestry—a Maryland corporation headquartered in New York—owns three brands: Coach, Kate Spade, and Stuart Weitzman. Op. 2. Coach acquired Stuart Weitzman in 2015 and Kate Spade in 2017, after which it renamed itself Tapestry. *Id*. Capri is a British Virgin Islands company headquartered in the United Kingdom. Op. 3. Capri owns the brands Michael Kors, Jimmy Choo, and Versace. *Id*. Michael Kors acquired Jimmy Choo in 2017 and Versace in 2018, renaming itself in the process as Capri. *Id*.

The two firms planned to further consolidate these brands via a merger agreement, signed on August 10, 2023, whereby Tapestry would acquire Capri for approximately $8.5 billion. Op. 5.

Following an investigation, on April 22, 2024, the Commission voted 5-0 to authorize the issuance of an administrative complaint challenging the legality of the proposed merger pursuant to Section 16 of the Clayton Act, 15 U.S.C. § 26, and Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45. *See* [Complaint](#), *In the Matter of Tapestry, Inc. and Capri Holdings Limited*, FTC Dkt. No. 9429 (April 22, 2024). The following day, April 23, 2024, the FTC filed this court action under Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), seeking a preliminary injunction against consummation of the merger during the pendency of the FTC's merits proceedings, to preserve the status quo and protect existing competition in the interim.

The district court held a seven-day hearing in September 2024. It considered hundreds of exhibits and heard from dozens of witnesses, including sixteen fact witnesses who testified live, twelve further fact witnesses who testified through designations of prerecorded videos of their depositions, and four witnesses who testified live as industry and economic experts. Op. 6 & n.1. In addition, the district court considered testimony from a further fifteen fact witnesses through post-hearing deposition designations. Op. 7 & n.1.

4

Following the hearing, "based on thorough consideration of all evidence and arguments presented," the district court decided to "enjoin the merger pending the completion of the FTC's in-house administrative proceeding." Op. 1. The district court issued a 169-page opinion in support of its decision. First, following a careful and exhaustive analysis of the qualitative and quantitative evidence, the district court found that "accessible luxury handbags" (as distinct from mass-market handbags and true-luxury handbags) was a relevant antitrust market. Op. 21-94. Second, with regard to the anticipated anticompetitive effects of the proposed merger, the district court found that "the FTC has shown both a sufficiently (and significantly) high post-merger market share (59 percent) and a sufficiently (and significantly) large post-merger HHI of 3,646 with a merger-induced change in HHI of 1,449." Op. 107.[1] Because these market concentration figures far exceeded the limits that courts deem sufficient to presume a merger's

---

[1] The Herfindahl-Hirshman Index (or HHI) is an analytical tool used to measure changes in market concentration. The HHI is calculated by summing the squares of each market participant's share of the relevant market, which thus takes into account the relative size and distribution of the firms in a market, increasing both as the number of participants in the market decreases and as the disparity in size among those participating firms increases. *See* Op. 97-98.

5

illegality—*i.e.*, a post-merger market share of 30 percent or more, or a post-merger HHI of greater than 1,800 combined with a merger-induced HHI increase of 100 or more, *see* Op. 94-95, 97-98—the district court determined that the FTC "has established a strong prima facie case" that the merger would violate Section 7 of the Clayton Act. Op. 107.

The district court then conducted a detailed review of the merging parties' rebuttal evidence and arguments, including the possibility of new market entry and expansion of existing market participants, brand autonomy and intra-competition within the merged entity, appellants' argument that the merger would allow a revitalization of Capri's "Michael Kors" brand, and their argument that handbags are "discretionary" consumer products and therefore consumers could exert a preclusive restraint on post-merger price increases. *See* Op. 107-147. The court rejected these arguments and concluded that "Defendants have failed to rebut" the FTC's prima facie case. Op. 147. Moreover, the court determined that even if the merging parties had succeeded in rebutting the prima facie case, "the FTC would still prevail due to the additional evidence of anticompetitive effects that it present[ed]." *Id.*; *see* Op. 149-162. Specifically, the district court found that "the merging

6

parties are close competitors, such that the merger would result in the loss of head-to-head competition," which is "persuasive additional evidence of unilateral effects of the merger causing anticompetitive harm." Op. 164.

The district court then turned to the weighing of the equities, *see* 15 U.S.C. § 53(b), finding that the balance of equities "clearly favors granting the FTC's request for a preliminary injunction." Op. 169. The district court specifically addressed, and rejected, the argument that appellants now rely on for their request for expedition—*i.e.*, that the February 10, 2025, "Outside Date" in their merger agreement means that "granting an injunction will necessarily kill the deal." Op. 168. After analyzing the contractual provisions at issue, the court concluded that the February 10 date in fact does not mandate termination of the merger deal, because "even if the merger does not close by then, the parties 'may' – not must – terminate the agreement." *Id*. The district court found "no reason why, if the merger makes economic sense now, it would not be equally sensible to consummate the merger following a[n] FTC adjudication on the merits that finds the merger lawful." *Id*.

7

(quoting *FTC v. Penn State Hershey Med. Ctr.*, 838 F.3d 327, 353 (3d Cir. 2016)).

The FTC's administrative adjudication of the antitrust merits of the proposed merger is now proceeding apace. After appellants sought and were granted multiple extensions of time, a hearing before an administrative law judge is scheduled to start on December 9, 2024.

## ARGUMENT

Expedition of appeals requires a showing of "good cause" because, as Chief Judge Friendly put it, "the need for speedy decision tends against the ample time and freshness of mind for private study and reflection in preparation for discussion and the writing of helpful opinions." *Am. Airlines, Inc. v. Civ. Aeronautics Bd.*, 445 F.2d 891, 895 n.2 (2d Cir. 1971) (internal citations omitted).[2] Here, appellants have failed to make the necessary showing of "good cause" that would warrant departure from the Court's standard briefing deadlines detailed in Circuit Rule 31.2(a), which allows parties up to 91 days to

---

[2] The Court maintains an Expedited Appeals Calendar for a limited class of cases (appeals from threshold dismissals). 2d Cir. R. 31.2(b). This case—an appeal from the grant of preliminary injunction in a merger challenge—does not fit any of the categories of actions the Court has pre-selected for expedition. *Id.*

8

prepare their briefs. Expedition here would disadvantage both the FTC and the Court by preventing fully developed advocacy and abbreviating the time for consideration of the issues on appeal.

## I.   APPELLANTS HAVE NOT DEMONSTRATED IRREPARABLE HARM ABSENT EXPEDITION.

Appellants have not shown that they would suffer any irreparable harm from having to adhere to the ordinary scheduling deadlines imposed by the Court's rules. Appellants concede that the terms of their merger agreement do not impose a termination deadline. They agree "that the merger agreement *may* terminate after February 10, 2025, meaning either party *may* walk away from the deal if the injunction remains in place as of that date." Mo. 8 (emphasis added). If the merging parties are committed to the merger deal and do nothing after February 10, 2025, the merger agreement will remain in full force while this appeal is resolved without the necessity of expedition. To the extent that the resolution of the appeal will cause the closing of the merger deal to be delayed, that simply is the ordinary and expected consequence of the necessary application of the antitrust laws.

Moreover, as the district court reasoned, any harm traced to the merger agreement's supposed termination deadline is a "self-inflicted

injury"—*i.e.*, the merging parties can remedy it contractually—which the court found to be "insufficient" to preclude a preliminary injunction allowing full adjudication of the antitrust merits of the proposed merger. Op. 169.

Likewise, that this appeal may not be resolved until after February 10, 2025, does not constitute irreparable harm and thus cannot be deemed good cause to expedite the appeal. The fact that the merger agreement allows the merging parties to withdraw from the deal scot-free after February 10, 2025, is a negotiated choice of the contracting parties' own making, which readily can be modified contractually.

Appellants assert that "the deal will crater if the injunction remains on February 10, 2025." Mo. 8-9.[3] But that is only true if one of

---

[3] In the district court, appellants introduced the rationale they now give for the deal "cratering"—the reduced demand for Capri's products, Mo. 8-9—as a reason that the merger would be procompetitive (*i.e.*, would benefit consumers), claiming that Tapestry would "revitalize" Capri's principal brand, "Michael Kors," by improving demand and increasing sales. *See* Op. 135-144. The district court rejected that rationale as unsupported by the record: "The evidence reflects that Tapestry perceived the acquisition of Michael Kors to be an opportunity to decrease Michael Kors's discounting and increase Michael Kors's prices – a recognized form of anticompetitive effects." Op. 144. "Simply put, Michael Kors faces no imminent risk of business failure." Op. 137.

the merging parties decides to opt out. Appellants strongly suggest that Tapestry may walk away, pointing out that Capri's stock value has seen "a decline of over 50% since the beginning of 2024." Mot. 9. In effect, appellants are acknowledging that, due to changed market conditions since their merger agreement, Tapestry is now experiencing serious buyer's remorse while Capri is holding out hope that the Court will save the now overpriced merger deal. Otherwise, there is "no reason why, if the merger makes economic sense now, it would not be equally sensible to consummate the merger following a[n] FTC adjudication on the merits that finds the merger lawful." *Penn State Hershey Med. Ctr.*, 838 F.3d at 353; *accord FTC v. H.J. Heinz Co.*, 246 F.3d 708, 726 (D.C. Cir. 2001) (if a "merger makes economic sense now," it likely will "do so later").

But the fact that the economics of the deal may have changed to favor one of the merging parties or the other is hardly "good cause" to rush the appellate review process. To the contrary, there is no reason why the Court should undertake the burden of deciding this case and the government forced to brief it on an expedited timeline if one of the merging parties is getting cold feet and no longer wishes to proceed with

11

the merger. If the merging parties remain committed to their deal, they readily can extend their February 10, 2025, "Outside Date." Indeed, parties to merger agreements often extend their contractual "outside date" deadlines when faced with an antitrust challenge to their merger. *See, e.g.*, UnitedHealth Group, *Change Healthcare and Optum Extend Merger Agreement* (April 5, 2022).

The main reason why appellants are now asking the Court to rush this case is another contractual provision. The merger agreement requires appellants to "use their reasonable best efforts to defend or contest, including through litigation or other means … [challenges to] the consummation of the [merger]" up until the Outside Date of February 10, 2025. *See* Op. 168 (citing PX1014 (Merger Agreement) § 6.2(a) at 53-54, § 8.1(d) at 72). In other words, both parties have to fight the preliminary injunction up through February 10, but after that they can walk away. As the district court reasoned, the "best efforts" obligation is further evidence that termination after February 10, 2025, is wholly discretionary. *See* Op. 168. Again, if the economics of the deal have changed such that one or both of the merging parties no longer wishes to pursue it, that cuts against expedition.

12

Lastly, appellants' current press for expedited review rings hollow in light of their prior repeated actions to delay this case. *See Nassau Blvd. Shell Serv. Station, Inc. v. Shell Oil Co.*, 869 F.2d 23, 24 (2d Cir. 1989) ("movant's delay in seeking relief" is ground for denying relief); *see also Citibank, N.A. v. Citytrust*, 756 F.2d 273, 276-77 (2d Cir. 1985) (litigant's "failure to act sooner undercuts the sense of urgency") (internal quotations omitted). Appellants themselves caused significant delays in both the judicial and administrative proceedings. For example, the FTC initially proposed that the district court's hearing on the preliminary injunction begin on August 26, 2024, only for appellants to reject this date and propose September 16, 2024. The court eventually set the hearing for September 9. Moreover, at no point did appellants ask the district court to rule by a certain date or on an expedited basis. To the contrary, they assured the court: "We don't want to rush you in your decision." Scheduling Conf. Tr., *FTC v. Tapestry, Inc.*, No. 24-3109 (S.D.N.Y. Apr. 29, 2024), at 15:24-25.[4] Appellants

---

[4] Likewise, appellants moved to delay the administrative hearing on the merits on three separate occasions—on May 24, September 12, and October 15, 2024—without regard to their newfound urgency for case resolution. *See* Case Timeline, *In the Matter of Tapestry, Inc.*, FTC No.

should not be rewarded now for their past resistance to the prompt resolution of the case. There simply is no emergency here.

## II.  EXPEDITION IS INAPPROPRIATE BECAUSE THE APPEAL INVOLVES A VOLUMINOUS RECORD AND A FACTBOUND DECISION ON REVIEW.

Expedition is also inappropriate in this case because the appeal involves the review of a voluminous factual record, exemplified by the district court's exhaustive and factbound opinion.

As noted above, the decision below involved a seven-day evidentiary hearing and a vast amount of evidence, including the testimony of 47 witnesses, hundreds of exhibits, and multiple expert reports. *See* Op. 6-7 & n.1. The district court's thorough opinion, which summarized and analyzed this evidence, spanned 169 pages.

The briefing and this Court's consideration of an appeal likely will require extensive time and effort and would be challenging even under the Court's ordinary schedule. Expedition will thus be disadvantageous to the parties and the Court. Indeed, allowing appellants to impose an expedited schedule—which would cut down the FTC's time to one-third (from 91 days to 30)—would be prejudicial to the FTC. The expedited

9429, *available at* <https://www.ftc.gov/legal-library/browse/cases-proceedings/231-0133-tapestry-inccapri-holdings-limited-matter>.

14

schedule is particularly problematic for the FTC, because its brief will be subject to review by multiple agency officials. The FTC should be afforded the necessary time to appropriately address appellants' arguments, which may be complex and—because of the press of time— less focused. *See Am. Airlines*, 445 F.2d at 895 n.2 ("In many such cases … the briefs on such expedited appeals are inadequate.").

## III. EXPEDITION IS NOT IN THE PUBLIC INTEREST.

Finally, both the public and the Court have a strong interest in ensuring that the issues presented in this case are fully litigated and adequately considered rather than rushed through in truncated fashion. This requires sufficient time for the parties to brief the issues and prepare for oral argument, and for the Court to consider these issues and issue a reasoned decision. *See Arlinghaus v. Ritenour*, 622 F.2d 629, 638 (2d Cir. 1980) ("[T]he appellate court should have the benefit of thorough briefing before considering a decisive issue or rationale.").

The Court should reject appellants' "attempt to convert … private injuries" from enjoinment or delay of the merger "into public costs." *FTC v. Univ. Health, Inc.*, 938 F.2d 1206, 1225 (11th Cir. 1991). That an appellant – like all appellants – believes that the district court erred in

15

its ruling does not warrant the undue burden that an expedited appeal would impose on the Court, the appellee, and even other litigants whose matters will be delayed by favored treatment of the expedited case. *See Am. Airlines*, 445 F.2d at 895 n.2 (expedition may harm public interest because it abbreviates the Court's time for consideration of the issues and preparation of reasoned opinions).

In sum, appellants' rush to have their appeal heard and decided before a deadline of their own making, which they readily can modify, does not constitute a sufficiently "good cause" to overcome the potential harm to public interest that could result from expedition.

## CONCLUSION

For the foregoing reasons, appellants' motion for expedited proceedings should be denied.[5]

---

[5] Should the Court nonetheless decide to expedite its consideration of this appeal, it should order the briefing schedule that appellants have proposed. We defer to the Court as to the scheduling of argument and issuance of a decision in the time and manner that best guarantees adequate consideration of the appeal.

Respectfully submitted,

ANISHA S. DASGUPTA
   *General Counsel*

November 5, 2024

/s/ Imad Abyad

IMAD D. ABYAD
MATTHEW M. HOFFMAN
   *Attorneys*

FEDERAL TRADE COMMISSION
600 Pennsylvania Avenue, N.W.
Washington, DC 20580
(202) 326-3579
iabyad@ftc.gov

17

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rules of Appellate Procedure 27(d) and 32(g), and Local Rule 27.1(a), I hereby certify that this memorandum complies with the type-volume limitation of the Federal Rules of Appellate Procedure. As measured by the word processing system used to prepare it, this memorandum contains 3,240 words.

/s/ Imad Abyad
Imad D. Abyad
*Attorney*
Federal Trade Commission